IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EVAN P. GILBERTSON,                                   06-CV-6137-BR

        Plaintiff,                               AMENDED
                                                  OPINION AND ORDER

v.

MICHAEL J. ASTRUE,
Commissioner of Social
Security,[1]

        Defendant.


DREW L. JOHNSON
Drew L. Johnson, P.C.
1700 Valley River Drive
Eugene, OR 97405
(541) 434-6466

---

[1] On February 12, 2007, Michael J. Astrue became the
Commissioner of Social Security and, therefore, is
substituted as the Defendant in this action pursuant to Fed. R.
Civ. P. 25(d)(1) and 20 U.S.C. § 405(g).

1  -  AMENDED OPINION AND ORDER

**KATHRYN TASSINARI**
Harder Wells Baron & Manning, P.C.
474 Willamette Street, Suite 200
Eugene, OR 97401
(541) 434-6466

       Attorneys for Plaintiff

**KARIN J. IMMERGUT**
United States Attorney
**NEIL J. EVANS**
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR  97204-2902
(503) 727-1053

**MICHAEL McGAUGHRAN**
Office of the General Counsel
**DAVID R. JOHNSON**
Special Assistant United States Attorney
Social Security Administration
701 5th Avenue, Suite 2900 M/S 901
Seattle, WA  98104-7075
(206) 615-2545

       Attorneys for Defendant


**BROWN, Judge.**

    Plaintiff Evan P. Gilbertson seeks judicial review of a

final decision of the Commissioner of the Social Security

Administration (SSA) in which he denied Gilbertson's application

for supplemental security income (SSI) under Title XVI of the

Social Security Act.  *See* 42 U.S.C. §§ 1381-83f.  This Court has

jurisdiction to review the Commissioner's decision pursuant to 42

U.S.C. § 405(g).

    Following a review of the record, the Court **REVERSES** the

2  -  AMENDED OPINION AND ORDER

Commissioner's decision and **REMANDS** this case for further
administrative proceedings.


## ADMINISTRATIVE HISTORY

Gilbertson applied for SSI on February 22, 2002.  The
Commissioner denied the claim.

Gilbertson filed a second application for SSI on April 23,
2003, which was denied initially and on reconsideration.  The ALJ
held a hearing on September 22, 2005.  At the hearing, Gilbertson
was represented by an attorney.  Gilbertson; a vocational expert
(VE); Gilbertson's mother, Denise Gilbertson; and Susan
Dragovich, Ph.D., a psychologist, testified at the hearing.

The ALJ issued an opinion on December 9, 2005, in which he
found Gilbertson was not disabled and, therefore, not entitled to
SSI benefits.  That decision became the final decision of the
Commissioner on April 12, 2006, when the Appeals Council denied
Gilbertson's request for review.


## BACKGROUND

Gilbertson was born on September 20, 1983, and was 22 years
old at the time of the hearing.  Tr. 21.[2]  Gilbertson appears to

---

[2] Citations to the official transcript filed with the
Commissioner's Answer on August 30, 2006, are cited as "Tr."

have been first diagnosed with Asperger's Syndrome[3] on August 22, 2002. Tr. 255. He graduated from Churchill Alternative High School in Eugene, Oregon. Tr. 124.

Gilbertson has held part-time jobs as a box-folder for a pizza restaurant and as a salesman for a cutlery company known as "Cutco." Tr. 323.

## STANDARDS

The initial burden of proof rests on the claimant to establish disability. *Roberts v. Shalala*, 66 F.3d 179, 182 (9th Cir. 1995), *cert. denied*, 517 U.S. 1122 (1996). To meet this burden, a claimant must demonstrate his inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Commissioner bears the burden of developing the record. *DeLorme v. Sullivan*, 924 F.2d 841, 849 (9th Cir. 1991).

The district court must affirm the Commissioner's decision

---

[3] Both parties agree Asperger's Syndrome is defined as "a pervasive developmental disorder resembling autistic disorder, being characterized by severe impairment or social interactions and by restricted interests and behaviors, but lacking the delays in development of language, cognitive function, and self-help skills that additionally define autistic disorder." *Dorland's Illustrated Med. Dictionary* 1810 (30th ed. 2003).

if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g). *See also Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).

The ALJ is responsible for determining credibility, resolving conflicts in the medical evidence, and resolving ambiguities. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). The court must weigh all of the evidence whether it supports or detracts from the Commissioner's decision. *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986). The Commissioner's decision must be upheld even if the "evidence is susceptible to more than one rational interpretation." *Andrews,* 53 F.3d at 1039-40. The court may not substitute its judgment for that of the Commissioner. *Batson,* 359 F.3d at 1193.

## DISABILITY ANALYSIS

### I.  The Regulatory Sequential Evaluation

The Commissioner has developed a five-step sequential inquiry to determine whether a claimant is disabled within the meaning of the Act. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987).

*See also* 20 C.F.R. § 416.920.  Each step is potentially dispositive.

In Step One, the claimant is not disabled if the Commissioner determines the claimant is engaged in substantial gainful activity.  *Yuckert*, 482 U.S. at 140.  *See also* 20 C.F.R. § 416.920(b).

In Step Two, the claimant is not disabled if the Commissioner determines the claimant does not have any "medically severe impairment or combination of impairments."  *Yuckert*, 482 U.S. at 140-41.  *See also* 20 C.F.R. § 416.920(c)).

In Step Three, the claimant is disabled if the Commissioner determines the claimant's impairments meet or equal "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity."  *Yuckert*, 482 U.S. at 140-41.  *See also* 20 C.F.R. § 416.920(d). The criteria for the listed impairments, known as Listings, are enumerated in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listing of Impairments).

If the Commissioner proceeds beyond Step Three, he must assess the claimant's residual functional capacity (RFC). The claimant's RFC is an assessment of the sustained, work-related activities that the claimant can still do on a regular and continuing basis despite his limitations.  20 C.F.R. § 416.945(a).  *See also* Social Security Ruling (SSR) 96-8p.

6  -  AMENDED OPINION AND ORDER

In Step Four, the claimant is not disabled if the
Commissioner determines the claimant retains the RFC to perform
work that he has done in the past. *Yuckert*, 482 U.S. at 141-42.
*See also* 20 C.F.R. § 416.920(e).

If the Commissioner reaches Step Five, he must determine
whether the claimant is able to do any other work that exists in
the national economy. *Yuckert*, 482 U.S. at 141-42. *See also* 20
C.F.R. § 416.920(e),(f).  Here the burden shifts to the
Commissioner to show a significant number of jobs exist in the
national economy that the claimant can do. *Yuckert*, 482 U.S. at
141-42. *See also Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir.
1999).  The Commissioner may satisfy this burden through the
testimony of a VE or by reference to the Medical-Vocational
Guidelines set forth in the regulations at 20 C.F.R. Part 404,
Subpart P, Appendix 2.  If the Commissioner meets this burden,
the claimant is not disabled.  20 C.F.R. § 416.920(f)(1).


## **ALJ'S FINDINGS**

At Step One, the ALJ found Gilbertson did not perform
substantial gainful activity during the relevant period of his
alleged disability.  Tr. 15.

At Step Two, the ALJ found Gilbertson has Asperger's
Syndrome and that it is a severe impairment.  Tr. 15.

At Step Three, the ALJ found Gilbertson's severe impairment

did not meet or equal the criteria of any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  Thus, the ALJ concluded it was necessary to determine whether Gilbertson retained the RFC to perform past relevant work or other jobs in significant numbers.  Tr. 16.

At Step Four, the ALJ found Gilbertson had not performed any past relevant work since the onset of his Asperger's Syndrome. Tr. 18.

At Step Five, the ALJ adopted the VE's conclusions that someone with Gilbertson's limitations could perform multiple jobs in the national economy, including library helper, electronics subassembler or disassembler, and stock shelfer.  Tr. 19, 361-65. Thus, the ALJ found Gilbertson is not disabled.  Tr. 19.


## DISCUSSION

Gilbertson contends the ALJ erred at Step Five by rejecting the opinion of Peter Moulton, Ph.D., an examining psychologist, and by failing to consider lay-witness evidence properly. Gilbertson also contends the ALJ's hypothetical to the VE was inadequate because it did not include the limitations set out in Dr. Moulton's opinion.

**I.    Lay-Witness Documentary and Testimonial Evidence.**

Gilbertson contends the ALJ erred when he failed to credit properly Denise Gilbertson's testimony and a letter from

Gilbertson's supervisor at Papa John's.

The ALJ must provide reasons germane to each lay witness before rejecting the testimony of the witness, but the ALJ is not required to consider or to address nonprobative information. *See Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001). *See also Vincent ex. rel. Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984).

### A.    Denise Gilbertson's Testimony.

Gilbertson contends the ALJ did not properly credit the testimony of his mother, Denise Gilbertson.

Denise Gilbertson testified Mackenzie Personnel, an organization that received funding from governmental vocational rehabilitation services, helped Gilbertson to learn and to navigate the bus system and to hone his interviewing skills. Tr. 337.  Because of Gilbertson's limitations, it took Mackenzie Personnel between six and nine months to place him at Papa John's.  Tr. 337.  Gilbertson also was employed by Cutco as a cutlery salesman, and Cutco worked hard to coach and to train Gilbertson for his sales job.  Denise Gilbertson did not think Gilbertson would have been able to perform either job without coaching, training, and practice.  Tr. 344.

Denise Gilbertson was not certain whether Gilbertson was capable of working full-time because, as noted, he needed a great deal of coaching; significant prompting for effective time-

management; and constant reminding in order to perform even simple, routine tasks and household chores. Tr. 339. Gilbertson often needed reminders merely to get out of bed at a regular time. Tr. 344. Denise Gilbertson also testified Gilbertson did not interact much with co-workers at Papa John's as illustrated by the fact that co-workers did not seem to know who Gilbertson was. Tr. 344. Denise Gilbertson stated Gilbertson might have an exaggerated view of his own abilities. Tr. 339.

The ALJ concluded Denise Gilbertson's testimony was credible to the extent that it was consistent with the record as a whole. Tr. 18. The ALJ did not expressly state that he rejected a particular portion of her testimony. The ALJ, however, pointed out that Gilbertson testified he was able to work full-time and his statement was supported by the record as a whole. Tr. 18.

Because of Denise Gilbertson's close relationship with Gilbertson, she is in a position to know Gilbertson's limitations. Thus, her testimony is probative and cannot be rejected without proper consideration. *See Lewis*, 236 F.3d at 511.

The Court, therefore, finds the ALJ erred when he failed to identify the portions of Denise Gilbertson's testimony that he rejected and to articulate his reasons for doing so.

**B.    Letter From Gilbertson's Supervisor at Papa John's.**

Gilbertson asserts the ALJ did not give proper credit to a

letter written by Gilbertson's supervisor at Papa John's in which the supervisor stated a job was more or less created for Gilbertson and consisted of tasks other employees usually did in their down time.  Tr. 157.  The supervisor also stated Gilbertson performed at about 75% capacity compared to other Papa John's employees.  Tr. 157.  Gilbertson contends the ALJ, therefore, should have found Gilbertson was disabled on the basis of the supervisor's letter because it tended to show a deficit of approximately 25% in Gilbertson's ability to work, which, in the opinion of the VE, could lead to an unsuccessful work attempt. Tr. 374.

On this record, the Court finds the ALJ provided legally sufficient reasons for the weight he gave to the letter from Gilbertson's supervisor at Papa John's.  *See Lewis*, 236 F.3d at 511.

## II.  Dr. Moulton's Opinion.

An ALJ may reject an examining physician's opinion when it is inconsistent with the opinions of other treating or examining physicians if the ALJ makes "findings setting forth specific, legitimate reasons for doing so that are based on substantial

evidence in the record." *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002)(quoting *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)).  When the opinion of an examining physician is uncontroverted, the ALJ must give "clear and convincing reasons" for rejecting the opinion.  *Id*.  *See also Lester v. Chater*, 81 F.3d 821, 830-32 (9th Cir. 1995).  The ALJ also must give "specific, legitimate reasons" for rejecting the opinion of an examining physician when that opinion conflicts with another physician's opinion or with evidence in the record.  *Magallanes*, 881 F.2d at 751.

A nonexamining physician is one who neither examines nor treats the claimant.  *Lester*, 81 F.3d at 830.  "The opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician."  *Id*. at 831.  When a nonexamining physician's opinion contradicts an examining physician's opinion and the ALJ gives greater weight to the nonexamining physician's opinion, the ALJ must articulate his reasons for doing so.  *See, e.g., Morgan*, 169 F.3d at 600-01.  A nonexamining physician's opinion can constitute substantial evidence if it is supported by other evidence in the record.  *Id*. at 600.

**A.    Dr. Moulton's Examination and Conclusions.**

Dr. Moulton performed a consultative psychological

examination of Gilbertson on June 9, 2003, and completed a
psychological evaluation on July 17, 2003.  Tr. 277.  The
examination included a one-hour interview with Gilbertson, three
and one-half hours of psychological testing, a 30-minute
interview with Gilbertson's father, and a medical-records review.
Tr. 278.

Dr. Moulton reported Gilbertson exhibited psychomotor
retardation, slow movements, slowed speech, and minimal
interpersonal contact during the examination.  Tr. 279.
Dr. Moulton diagnosed Gilbertson with Asperger's Syndrome,
assessed him with a Global Assessment of Functioning (GAF) score
of 45, and concluded Gilbertson has "serious social and
occupational impairments."  Tr. 286.  Dr. Moulton opined
Gilbertson would experience

> serious difficulty [in a workplace setting]
> interacting with co-workers, supervisors, and
> the general public.  He would have difficulty
> communicating and would likely be seen to be
> withdrawn, aloof, and perhaps somewhat odd.
> These difficulties would likely result in
> greater withdrawal.  His impaired visual
> memory would likely limit his areas of job
> functioning and make on-the-job-learning
> difficult in many settings.  His impaired
> processing speed could be expected to make it
> difficult to achieve production quotas in
> many settings.  His current life schedule and
> depressive symptoms would likely make it
> difficult for him to maintain acceptable
> punctuality and attendance.

Tr. 277.

13 -  AMENDED OPINION AND ORDER

B.    __The ALJ's Conclusions.__

The ALJ rejected Dr. Moulton's opinion on the ground that it was inconsistent with other medical evaluations, with school reports, with the testimony of Gilbertson's mother, and with Gilbertson's testimony that he performed adequately at his Cutco job and believed he could work full-time.  Tr. 17.

Dr. Moulton determined Gilbertson would have "serious difficulty" interacting and communicating with others.  Tr. 277. State Disability Determination Service (DDS)[4] psychologists' evaluations conducted over two calendar years, however, reflect Gilbertson experienced only moderate difficulty with social functioning and mild or moderate difficulties with concentration, persistence, and pace.  Tr. 260, 297.  Thus, the DDS evaluations contradict Dr. Moulton's opinion.

The DDS reports appear to have been prepared by nonexamining psychologists.  *See Lester*, 81 F.3d at 830-31 (nonexamining physicians are "those who neither examine nor treat the claimant.").  As noted, when a nonexamining physician's opinion contradicts an examining physician's opinion, the ALJ must articulate sufficient reasons for giving greater weight to the nonexamining physician's opinion.  *See Morgan*, 169 F.3d at

---

[4] Disability Determination Services (DDS) is a federally funded state agency that makes eligibility determinations on behalf and under the supervision of the Social Security Administration pursuant to 42 U.S.C. § 421(a) and 20 C.F.R. § 416.903.

600-01.

The ALJ gave great weight to the DDS psychologists' 2002 and 2003 reports.  Tr. 18, 83-90, 103-11, 258-63, 295-306.  In their 2002 evaluations, the DDS psychologists concluded Gilbertson could follow routine supervision; experienced only moderate difficulty with social functioning; and experienced only mild difficulty with daily living activities, concentration, and pace. Tr. 18, 260.  The DDS psychologists reached substantially the same conclusions in their 2003 evaluations except for the observation that Gilbertson now had moderate limitations in concentration, persistence, and pace.  Tr. 18, 297.  The ALJ rejected Dr. Moulton's opinion based on the DDS psychologists' evaluations and the fact that Dr. Moulton's conclusions were inconsistent with other evidence in the record.

For example, the ALJ noted Gilbertson's school records reflected his Asperger's Syndrome was mild and that he was really just "floundering around."  Tr. 17.  The particular school record that the ALJ relied on is a questionnaire filled out by someone from Gilbertson's high school who apparently knew Gilbertson for about 20 months, saw him twice weekly, believed he did not have absenteeism problems, and concluded he excelled in small-group discussions.  Tr. 115-22.  It is not possible, however, to determine the author's qualifications or credibility from the record.  Nevertheless, the information contained in the

questionnaire weighs slightly against Dr. Moulton's opinion.

In addition, Gilbertson testified he began working at Cutco about one month before his hearing.  Tr. 323.  He sold cutlery for Cutco for an average of seven hours per week.  Tr. 323-24. According to Gilbertson, his job required that he engage in telephone conversations; schedule in-home appointments with potential customers; and perform face-to-face, in-home product demonstrations that lasted from 30 minutes to one hour.  Tr. 332. Gilbertson also testified he worked part-time at Papa John's folding pizza boxes and performing other simple tasks for approximately twelve hours per week.  Tr. 325.  This job involved some interaction with others and the occasional answering of telephones.  Tr. 329.  In addition, Gilbertson testified he believed he was capable of working full-time. Tr. 334-36.

Gilbertson's work history, testimony, and subjective impression of his ability to work full-time somewhat weighs against Dr. Moulton's opinion.  Because Gilbertson's Asperger's Syndrome is a mental condition, however, it easily could affect Gilbertson's capacity to evaluate his own abilities.  As noted, Denise Gilbertson testified Gilbertson might have an inflated sense of his own abilities.  Tr. 339.  In addition, the ALJ observed Gilbertson's job at Papa John's was a "do-nothing"

16 -  AMENDED OPINION AND ORDER

position and Gilbertson had no past relevant work experience. Tr. 17-18.

Gilbertson's assessment of his abilities is also at odds with the testimony of Susan Dragovich, Ph.D., who testified at the request of the ALJ.  Dr. Dragovich expressly noted Gilbertson's abilities were difficult to evaluate because he lived with his parents in what Dr. Dragovich considered the equivalent of a supported living environment.  Tr. 351, 356.

Although Dr. Moulton's opinion was based on psychological tests that he conducted, the ALJ found Dr. Moulton's opinion was "not consistent with his testing of [Gilbertson], or with other reports in the file." Tr. 17.  The ALJ, however, did not specifically identify the inconsistency between Dr. Moulton's findings and his testing or other reports.  Instead the ALJ supported his conclusion with references to the evaluations of the DDS psychologists.  Tr. 17.  Thus, the fact that Dr. Moulton's opinion differed from the conclusions of the nonexamining DDS psychologists appears to be the primary reason for the ALJ's rejection of Dr. Moulton's opinion.  As noted, however, the opinion of a nonexamining physician alone cannot constitute substantial evidence to reject the opinion of an examining physician.  *Lester*, 81 F.3d at 830-31.

On this record, therefore, the Court concludes the ALJ erred by rejecting Dr. Moulton's opinion without providing legally

17 -   AMENDED OPINION AND ORDER

sufficient reasons supported by substantial evidence in the
record for doing so.

## REMAND

The decision whether to remand for further proceedings or
for the payment of benefits is a decision within the discretion
of the Court. *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir.
2000). This decision turns on the likely utility of further
proceedings. *Id.* at 1179. The Court may "direct an
award of benefits where the record has been fully developed and
where further administrative proceedings would serve no useful
purpose." *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996).

The Ninth Circuit has established a three-part test "for
determining when evidence should be credited and an immediate
award of benefits directed." *Harman*, 211 F.3d at 1178. The
Court should grant an immediate award of benefits when:

> (1) the ALJ has failed to provide legally
> sufficient reasons for rejecting such
> evidence, (2) there are no outstanding issues
> that must be resolved before a determination
> of disability can be made, and (3) it is
> clear from the record that the ALJ would be
> required to find the claimant disabled were
> such evidence credited.

*Id.* The second and third prongs of the test often merge into a
single question: Whether the ALJ would have to award benefits if
the case were remanded for further proceedings. *Id.* at 1178 n.2.

Here it is not clear from the record whether the ALJ would be required to award benefits to Gilbertson on remand. During Gilbertson's hearing, the ALJ asked the VE to consider a hypothetical person with no past relevant work experience; no physical limitations; some deficits in processing speed; an inability to interact with people in an integral work team; and who required an occupation with even-paced, unrushed tasks, and no high-production quotas. Tr. 357-59. The ALJ, however, must base his hypothetical to the VE on all of the claimant's limitations. *See Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 886 (9th Cir. 2006)(When posing hypotheticals to a VE, the ALJ may not "disregard properly supported limitations.").

Because the ALJ improperly rejected Dr. Moulton's opinion, the ALJ's hypothetical to the VE may not have included all of Gilbertson's limitations. Thus, the Court cannot determine whether benefits would be required if all or part of Dr. Moulton's opinion were credited. *See Robbins*, 466 F.3d at 886.

Accordingly, the Court remands this matter for further administrative proceedings.

<u>**CONCLUSION**</u>

For these reasons, the Court **REVERSES** the decision of the

19 -  AMENDED OPINION AND ORDER

Commissioner and **REMANDS** this matter pursuant to sentence four of 42 U.S.C. § 405(g) for further administrative proceedings.

IT IS SO ORDERED.

DATED this 21st day of March, 2007.


/s/ Anna J. Brown
_____
ANNA J. BROWN
United States District Judge